THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH LEVATO, Plaintiff in Error.

*Opinion filed April 21, 1928—Rehearing denied June 14, 1928.*

1. CRIMINAL LAW—*what is sufficient to prove cashing of bogus checks.* Where a defendant is charged with obtaining money by means of a bogus check, evidence that the defendant after getting the check O. K.'d by the treasurer of a merchandising firm by means of false identification, went to the cashier's office and that the check was delivered by the cashier to the treasurer in the course of business and deposited to the firm's account, is sufficient to prove that the check was cashed for the defendant although there is no direct evidence that any money was paid over to him.

2. SAME—*what necessary to introduction of entries in course of business.* Where the person who makes entries in the due course of business is living and sane and is not permanently out of the State, it must be proved by him that the entries were so made and that they are correct and true entries before they can be admitted in evidence, as between third parties, as proof of the facts recited.

3. SAME—*what evidence of other offenses is admissible in prosecution for confidence game.* Where a defendant is charged with the confidence game in obtaining money by means of bogus checks, evidence of the presentation of a similar check on another occasion is not admissible where there is no positive identification of the defendant as the person who presented it, but evidence that the defendant on another occasion waited outside while his companion went into a store to cash a similar check, and evidence of what was said and done by said companion, is admissible.

4. SAME—*when portion of instruction referring to attempt to obtain money by confidence game should be stricken.* In a prosecution for the confidence game committed by means of a false or bogus check, where the indictment charges that the defendant "did obtain" the money of his victim, the jury should not be instructed that anyone who shall obtain "or attempt to obtain" any money by such means shall be punished as provided in the statute; but the giving of such instruction cannot be regarded as prejudicial where the defense is an alibi.

5. SAME—*what instruction as to credibility of witnesses is improper—reversal.* An instruction is improper which, in effect, tells the jurors, without any reference to the evidence in the case or what occurred during the trial, that they are at liberty to determine the credibility of the witnesses according to their own judgment, without any guidance from the court as to the reasons which might be proper to consider in making such determination; but the giving of such instruction will not require reversal where the verdict of guilty is justified by the evidence.

6. SAME—*indefinite instruction may be refused.* Instructions should be plain and definite in their statement of the principles which they are intended to announce, and if they are not they may be properly refused.

7. SAME—*allowing exhibits to be taken by jury rests in discretion of court.* It is within the reasonable discretion of the trial court to determine what papers introduced in evidence or what exhibits of physical objects may be taken by the jury when they retire to consider a verdict, and the exercise of such discretion in permitting certain exhibits or papers to be taken will not be regarded as error unless the reviewing court can see that such a course was prejudicial to the defendant.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WORTH E. CAYLOR, Judge, presiding.

BERNARD J. McDONNELL, and JOSEPH T. HARRINGTON, (EDWARD N. SHERBURNE, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, JOHN HOLMAN, IRVING GOLDSTEIN, and SAMUEL HOFFMAN, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ralph Levato was convicted of obtaining money by means of the confidence game and prosecutes this writ of error to review the judgment.

The testimony of the prosecution tends to show the following facts: Between two and four o'clock in the afternoon of September 11, 1926, after the banks were closed, the plaintiff in error and Roy Wall, in the store of Tebbetts & Garland, showed an identification card to Frances Schumacher, a switch-board operator on the first floor, and asked her to O. K. a check. She referred them to Caroline M. Nelson, who was assistant secretary and treasurer. Wall and Levato went to Miss Nelson's office in the balcony and Wall presented a check to her purporting to be a check of the International Harvester Company for $61.20, dated September 10, 1926, payable to H. R. Watt and signed by "A. Wagner, pay-master," and asked to have it O. K.'d. She asked if they had an account with the store, and being answered "no" told him it was against the rules of the house to O. K. checks unless they had an account with the store. Wall said, "We will certainly appreciate it if you can do something for us, because the International Harvester Company is now paying by check instead of currency since the hold-up." She asked for identification, and Wall showed

her a green identification pay-roll slip, the number on which corresponded with the check. Wall said his name was Watt. She O. K.'d the check, and Wall then said he had a friend there who also wanted his check O. K.'d. Wall indorsed his check by the name of Watt and Levato his by the name of Soli. They then went to the cashier's cage on the first floor. The two checks were afterward returned to Caroline Nelson, who deposited them to the credit of Tebbetts & Garland's bank account, and they were in due course returned with the word "Fraud" stamped on their faces and charged back against the bank account. Levato and Wall were arrested on September 14 while Wall was engaged in an attempt to cash at Weiboldt's store a similar check purporting to have been drawn by the International Harvester Company. Levato was at the time in his own automobile across the street from Weiboldt's store, having taken Wall to that store. Upon their arrest Caroline Nelson was called to the police station and identified them as the two men who had cashed the checks. Her identification of the plaintiff in error on this trial was positive, and Frances Schumacher also identified him positively as one of the men who asked her to O. K. a check and then went to the balcony and from there to the cashier's cage. No one who knew the fact testified that the checks were, or either of them was, cashed by Tebbetts & Garland. One of the cashiers was R. Nelson. She was not employed by Tebbetts & Garland at the time of the trial and did not testify. Caroline Nelson testified that she had supervision, direction and control of the records made by the cashiers each night upon large sheets of paper and turned over to the main cage, checked by the main cashier the following morning and delivered to Miss Nelson and placed and kept in a permanent loose-leaf binder under her direction and control. The report sheet of R. Nelson for September 11 was produced by Caroline Nelson and received in evidence over the objection of the plaintiff in error. The report showed on its face

items of silver, currency, stamps, credit, C.O.D. and checks. The item "Checks" amounted to $401.90. On the back were listed certain checks amounting to $401.90, among which were two International Harvester checks for $61.20 and $55.60, respectively. In the ordinary course of business the two checks of corresponding amounts purporting to be checks of the International Harvester Company, being the checks which she had O. K.'d for Wall and Levato, came to Caroline Nelson from the cashier, R. Nelson, were deposited by Caroline Nelson in the bank and in due course returned stamped "Fraud." No other interpretation of the circumstances is reasonably possible than that the cashier, R. Nelson, cashed the checks with funds of her employer. The evidence was sufficient and convincing both as to identity and the obtaining of the money of Tebbetts & Garland. Testimony was given showing that the checks were not issued by the International Harvester Company.

The plaintiff in error contends that the report of R. Nelson should not have been admitted in evidence over the general objection because it was not shown to have been in the handwriting of R. Nelson, or to have been made on September 11, or to have been true and correct. Caroline Nelson did not testify that the report was in the handwriting of R. Nelson, but she did testify that it was the report of R. Nelson and was the report of September 11. Where the person who makes entries in the due course of business is living and sane and is not permanently out of the State, it must be proved by him that the entries were so made and that they are correct and true entries before they can be admitted in evidence, as between third parties, as proof of the facts recited. (*People* v. *Geister,* 289 Ill. 249; *People* v. *Vammar,* 320 id. 287; *People* v. *Schallman,* 273 id. 564.) The receiving of the report in evidence was not, however, prejudicial to the plaintiff in error, for Caroline Nelson testified that the checks were turned in by the cashier with her report and her cash, and that was sufficient, in connection

with the circumstances that the two men went to the store to there exchange their checks for cash, secured the O. K. of Caroline Nelson for that avowed purpose and proceeded to a cashier with the checks indorsed by them, to show beyond any doubt that they succeeded in their purpose. The testimony of R. Nelson that she actually gave them the money would have added no weight to this unbroken chain of circumstances. The written report of R. Nelson was of no particular importance to help or harm.

It is contended that the court erred in admitting evidence of other crimes of the same character as the one charged, to show intent, because the evidence of such other like crimes did not show that they were committed by the plaintiff in error. The first occurred at the Boston store. Isaac Friend, who was one of the executives of the Boston store, testified that two men presented a check and a card of identification to him and that after he saw the identification he stamped the check. He did not identify the plaintiff in error. The check purported to have been issued by the International Harvester Company for $63.22, was dated September 3, 1926, payable to M. Golden, and was signed "A. Wagner, pay-master." The two men took the check to Sofia Shure, the cashier, who paid it. She testified at the trial that she saw there one of the two persons who presented the check, indicating the plaintiff in error. It seemed to her that the men were dressed in ordinary overalls, like laborers. She paid the check to the man pointed out and did not recall any other differences in appearance. She said there was a doubt in her mind at the time she was testifying as to whether he was the man she saw. On cross-examination she testified that Hirschfield, at the Boston store, sent for her to come over to the trial, and as she passed through the hall her attention was directed to the plaintiff in error. He was sitting with his back toward her and no one directed her attention to him. She noticed him herself as she came in because he looked familiar to her.

She was asked by a man in the hall if that was the man, and she said she could not say right out there in the hall. When she came into the court room she walked over to the window and then the plaintiff in error came in and talked to his attorney, and the attorney asked her to look at him and see if she knew "this boy," and she said she could not say. There was nothing new that would cause her to give any different answer, but the more she looked at him the more she seemed to recognize him; that this was the first time she had been asked to identify "this boy" since September, 1926. It is apparent that she was not certain of her identification of the plaintiff in error, and in view of her whole testimony it cannot be said that her identification of him was either positive or satisfactory. (*People* v. *Dempsey*, 283 Ill. 342.) The evidence concerning this transaction should not have been admitted.

The plaintiff in error was arrested on September 14 while he was sitting in his automobile across the street from the store of the W. A. Weiboldt Company, waiting for Wall, who had gone into the store for the purpose of cashing another bogus check for $45.20, dated September 10, payable to A. J. Roth and purporting to have been issued by the International Harvester Company and signed by Wagner, pay-master. Wall was detained by the department manager and the police were called. Wall pointed out the plaintiff in error to the police and said that the plaintiff in error was waiting for him. The evidence was admitted of Wall's attempt to cash the check in the store, of his arrest there and what was said and done there in that connection, and the check was also introduced in evidence, all over the objection of the plaintiff in error, and it is now contended that all this evidence was incompetent because everything to which it referred occurred in the absence of the plaintiff in error. The plaintiff in error's objection, however, was properly overruled. The evidence introduced showed that Wall and the plaintiff in error had gone together to the Wei-

boldt store, and while one waited outside in the automobile the other went in and attempted to commit a crime similar to that which they had committed three days before in the Tebbetts & Garland store, with the same sort of device,—a bogus check of the International Harvester Company. Wall had in his possession some blank checks similar to the one he was attempting to cash in Weiboldt's. It could be fairly inferred from the evidence that Wall and the plaintiff in error were engaged in a conspiracy to cash bogus checks of the International Harvester Company, and the acts and declarations of each in carrying out the conspiracy were admissible against the other. The evidence was competent to show their intent.

The plaintiff in error testified, denying that he was with Wall at the Tebbetts & Garland store or had any part in or knowledge of what occurred there or at the Boston store. He said he was employed at a grocery store conducted by his father at 3133 Wentworth avenue and was acquainted with Wall, whom he had met occasionally. About two o'clock in the afternoon of September 14 his father came to the grocery store and the plaintiff in error left, intending to go home and not return to the store. He was driving his own car. He stopped at a drug store for some cigarettes, and there he met Wall, who asked him to take him north, saying if he would do so Wall would buy some gas and oil. Wall did not tell him where he wanted to go. After they left Thirty-first street and Wentworth avenue they went up Michigan avenue through Lincoln Park and then started out north. He did not know just what streets they traveled on the North Side, but they were on Ashland avenue when Wall asked him to stop and wait and he would be right back. He did not know where Wall went. He did not have any idea he was about to cash a check. He was waiting for Wall in his car when the officer came, arrested him and took him to the station. He testified that on September 11 he was in the store all day,

arriving at eight o'clock in the morning and staying until eight o'clock in the evening, not leaving for any length of time during the whole day. He had his dinner that day at the store, which he cooked himself. He was partially corroborated as to this alibi by his father, his fifteen-year-old sister and her sixteen-year-old friend, and three women customers of the store who were there in the afternoon about half-past two or three o'clock, staying about five minutes, ten minutes or fifteen minutes. The testimony for the prosecution tended to show the commission of the offense charged between two and four o'clock in the afternoon of September 11. Miss Nelson testified it was two or three o'clock, and Miss Schumacher 3:30 or 4:00. The two young girls testified that they went to the store at 3133 Wentworth avenue at two o'clock and were there about fifteen minutes; that Ralph, the plaintiff in error, was there and they saw no one else. They then went to the theater just across the street and returned to the store at a quarter past four. Ralph and his father were there at that time. Two of the three women who testified were sisters-in-law. One went to the store at 2:30. Ralph waited on her five or ten minutes. Just as she was going out her sister-in-law came in. The latter was there about ten minutes and neither of them saw anyone there except Ralph. The third woman testified that she came to the store at half-past two, three, or half-past three; that Ralph sold her groceries and no one else was there. She was there about fifteen minutes. The plaintiff in error's father testified that he had two places of business—one at 9 East Seventh street and one at 3133 Wentworth avenue; that he had had the latter store since 1926, and his son, Ralph, was running it for him. On September 11 he opened the Wentworth avenue store about half-past six or seven. He usually stayed there until eight o'clock. Ralph came there that morning at eight o'clock and his father then went to the Randolph market. He returned to the Wentworth avenue store about four o'clock or

fifteen minutes to four and stayed there until eight o'clock. Ralph was there from the time he returned until they closed the store. So far as the evidence for the prosecution fixed the time of the commission of the crime, it occurred between two and four o'clock in the afternoon. The testimony of the witnesses of the plaintiff in error in support of his alibi does not purport to cover more than forty-five minutes of these two hours and is wholly insufficient to establish the defense.

The action of the court in giving and refusing instructions is assigned for error. The first instruction given for the People was as follows:

"The court instructs the jury, in the language of the statute, that every person who shall obtain, or attempt to obtain, from any other person or persons any money, property or credit, by means or by use of any false or bogus check or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned in the penitentiary not less than one year nor more than ten years."

The indictment charges that the plaintiff in error obtained $56 by use of the confidence game. It would not be sustained by proof only of an attempt to obtain money by the confidence game, and the instruction might lead the jury to believe that proof of an attempt to obtain money by the confidence game would have been sufficient to justify a verdict of guilty. The argument of counsel assumes that the evidence did not show that any money was actually obtained at the Tebbetts & Garland store, but that assumption was not justified by the evidence. The part of the instruction referring to an attempt to obtain money should have been stricken from the instruction before it was given. The only questions which arose out of the evidence for the consideration of the jury were the identification of the plaintiff in error in the Tebbetts & Garland store and the defense of an alibi. These questions were not affected by the instruc-

tion, and it was not, therefore, prejudicial to the plaintiff in error.

Instruction No. 7 advised the jury that they were the sole judges of the credibility of the witnesses, and stated that in judging the credibility of the witnesses the jurors should consider all the circumstances under which any witness testified, his demeanor and manner while on the stand, his interest, if any, in the outcome of the case, the relations which he bore to the State or to the defendant, the manner in which he might be affected by the verdict, the extent to which he is contradicted or corroborated by any other credible evidence, if at all, and concluded, "and any circumstances that tend to shed light upon his credibility. You should determine the amount of credence to which each statement is entitled at your hands as reasonable and intelligent men." This instruction was held erroneous in *People v. Krauser,* 315 Ill. 485, because it told the jurors, without any reference to the evidence in the case or what occurred during the trial, that they were at liberty to determine the credibility of the witnesses according to their own judgment, without any guidance from the court as to the reasons which might be proper to consider in determining the credibility of the witnesses. This view is sustained by the cases of *Purdy* v. *People,* 140 Ill. 46, *Vale* v. *People,* 161 id. 309, *People* v. *McGinnis,* 234 id. 68, *People* v. *Terrell,* 262 id. 138, *People* v. *Fox,* 269 id. 300, and *People* v. *Toohey,* 319 id. 113. These cases, while holding the giving of such an instruction erroneous, also hold that it is not necessarily so prejudicial as to require the reversal of the judgment in a case where the guilt of the defendant is so clearly established that the jury could not reasonably return any other verdict than guilty. (*People* v. *Terrell, supra; People* v. *McGinnis, supra.*) This is such a case.

It is contended that the court erroneously refused to give the jury an instruction tendered by the plaintiff in er-

ror on the subject of the presumption of innocence. The instruction stated a correct principle of law, and it would have been error to refuse it but for the fact that the court gave instruction No. 2 on the same subject at the request of the plaintiff in error, which included, in substance, every principle announced in the fourth instruction. It was therefore not error to refuse it.

Instruction No. 5 asked by the plaintiff in error was refused. It is as follows:

"The court instructs the jury: that so far as the identity of the defendant is concerned and from the evidence and circumstances proved the jury believe that there is a reasonable doubt whether the witnesses might not be mistaken as to the identity of the defendant, they would not be authorized to sign a verdict of guilty; the corroborating circumstances tending to establish the defendant's identity must be such as, with other testimony, produce a degree of certainty in the minds of the jury so great that they can say there is no reasonable doubt of the identity of the defendant."

This instruction is unmeaning because of the omission of the requirement that the jury believe, from the evidence and the circumstances proved, that there is a reasonable doubt whether the witnesses might not be mistaken as to the identity of the defendant. It is said in the plaintiff in error's brief that the instruction is substantially the same as the one given in the case of *Painter* v. *People,* 147 Ill. 444; but this is a mistake, because the instruction refused in this case omitted the words which were contained in the instruction in the *Painter case* immediately after the word "concerned," "that if they believe." The omission of these words was fatal and leaves the instruction without meaning, as it reads, the court instructs the jury positively "and from the evidence and circumstances proved the jury believe," without leaving the question of belief to the deter-

mination of the jury. This was no doubt a clerical mistake, but it deprived the instruction of any meaning and would render it confusing to the jury. Instructions should be plain and definite in their statement of the principles which they are intended to announce, and if they are not they may be properly refused.

It is contended that the court erred in permitting the jury to take with them to their room when they retired to consider their verdict, the check which Wall attempted to cash at the Weiboldt store and which was introduced in evidence over the plaintiff in error's objection. It is the rule at common law that it is within the reasonable discretion of the court to determine what papers introduced in evidence the jury should take with them when they retire to deliberate on their verdict, and the exercise of such discretion is not error unless the reviewing court can see that such a course was prejudicial to the defendant and ought not, in the exercise of a sound discretion, to have been pursued. Physical objects which form a part of or serve to illustrate the transaction or occurrence which is the subject of investigation may be formally introduced in evidence, and it rests in the discretion of the trial judge whether they may be carried from the bar by the jury on their retirement. (*Painter* v. *People, supra; People* v. *Morris,* 254 Ill. 559; *People* v. *Clark,* 301 id. 428; *People* v. *Andrae,* 305 id. 530.) There was no abuse of discretion in the action of the court in this respect.

While some errors occurred on the trial, on the whole record it appears that the plaintiff in error was not prejudiced by them.

The judgment is affirmed.          *Judgment affirmed.*