(No. 25612.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES A. BRAUN *et al.* Plaintiffs in Error.

*Opinion filed Dec. 12, 1940—Rehearing denied February 5, 1941.*

Charles A. Bellows, (J. W. Bellows, of counsel,) for plaintiffs in error.

John E. Cassidy, Attorney General; Thomas J. Court-ney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, Rich-ard B. Austin, and Alexander J. Napoli, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Plaintiffs in error were convicted in the criminal court of Cook county of conspiracy to extort from and to defraud motorists of large sums of money by causing wrongful arrests for and false charges of motor vehicle offenses in the village of Dixmoor. Charles Braun, police magistrate of the village, and Charles Special, president of the village board of trustees, were sentenced to one year in the house of correction and to pay a fine of $2000. Robert Greco, Charles Paduano and Tony Bater, police officers, were sentenced to one year in the house of correction and fined $500 each. The judgment was affirmed by the Appellate Court for the First District and defendants have sued out a writ of error to review the proceedings.

It is insisted the trial court should have quashed the indictment. Both counts allege defendants were officers of Dixmoor, a village of about 1200 inhabitants, near Chicago, through which motorists pass on a public highway, and that the defendants unlawfully, wilfully, and corruptly conspired, combined, confederated and agreed with fraudulent and malicious intent to extort from and defraud motorists of money. The second count sets out the means to accomplish the object of the conspiracy and also alleges that defendants abused their respective offices, caused motorists to be wrongfully arrested and unjustly charged with violations of the Motor Vehicle law; that the police officers gave false testimony; that magistrate Braun arbitrarily, wilfully, corruptly and oppressively found the motorists guilty of the offenses charged and levied extortionate fines.

The objections to the indictment are that it lacks certainty and that the means for consummating the conspiracy are not alleged. The gist of the crime of conspiracy is the unlawful agreement to accomplish an unlawful purpose or an agreement to perform a lawful act in an unlawful way. (*Williamson* v. *United States,* 207 U. S. 425; *People* v.

*Drury*, 335 Ill. 539.) Thus, it is not necessary that the indictment contain allegations as to the means by which the act or object of the conspiracy is to be accomplished. (*People* v. *Schneider*, 345 Ill. 410; *People* v. *Blumenberg*, 271 id. 180; *Johnson* v. *People*, 22 id. 314.) If an indictment notifies the defendant of the nature and cause of the accusation so as to enable him to prepare his defense it is sufficient. (*People* v. *Moore*, 368 Ill. 455; *People* v. *Waitches*, id. 302.) The indictment, here, clearly charges an unlawful agreement, the essence of the crime, and sets out facts upon which the agreement is predicated. It adequately informed the defendants of the crime charged and is certain enough to protect them from further prosecution for the same offense. Plaintiffs in error also contend the object of the conspiracy is not stated with the requisite certainty. The crime of conspiracy is complete on the coming into being of the unlawful agreement and the object need only be stated with certainty to a common intent. (*People* v. *Waitches, supra.*) The object stated in the indictment is "to extort and defraud" and is named with sufficient certainty.

Plaintiffs in error claim the evidence does not show defendants are guilty of conspiracy beyond a reasonable doubt. An examination of the testimony and exhibits does not support their contention. The village of Dixmoor, through which run Western avenue and Governor's highway, was in straitened financial circumstances. Defendant Greco had been a police officer for some time, and defendant Paduano was hired as a policeman in 1936. At the time the latter was employed, president Special said, in response to a query by the trustees as to how Paduano was going to be paid: "It is there on the highways. Whatever they are going to make, that is all they are going to get." A short time later Special recommended that another police officer who was to get his money from the highways be hired. Defendant Bater was appointed.

All the defendants were paid out of the general fund of the village. The general fund was augmented from time to time by sums from the road and bridge fund. Fines collected by police magistrate Braun from motorists after arrests made by defendant police officers were paid by him into the road and bridge fund. Special testified that transfers of sums from the road and bridge fund to the general fund were necessary in order to pay his salary and the salary of the defendant police officers. In a very material way, therefore, the salaries which the defendant officers received, as well as the remuneration of Braun, depended upon the arrests and fines which were received. In the fiscal year prior to the indictment, the fines ranged from $198 for the month of May, to $989 for the month of October, 1937. For several months the fines averaged more than $700.

Soon after the revenue from fines increased, defendant Special received substantial sums from the village. In December, 1937, he got $584.89 and in the next month more than $300. He testified that these sums were to repay him for moneys he advanced for village expenses, but his salary had also been raised.

To support an indictment for conspiracy it is not necessary to prove an agreement in express terms. The existence of a conspiracy can be shown by the conduct of the parties and other circumstances which disclose that the accused persons, either by acting together or separately, pursued a course tending to accomplish a common, unlawful design. (*People* v. *Cohn*, 358 Ill. 326; *People* v. *Drury, supra; People* v. *Walczak,* 315 Ill. 49.) The testimony of eighteen motorists was produced by the People to prove such a cause of action.

Joseph Masacci, a truck driver arrested by defendant Greco and fined by Braun, testified that Greco said Special and Braun were on a porch nearby and had sent Greco after Masacci. Masacci was told by Special that the police officers had to make at least ten "pinches" a day in order to make their salaries.

Another of the motorists, Dr. Walter Zurndorfer, testified that he was arrested on Western avenue when the road was congested and his car was hemmed in on three sides by other cars and on the fourth side by the curb. He said he was moving at a speed between 30 and 35 miles per hour when arrested by defendant Bater and that he was accused of going 55 miles per hour. When taken before defendant Braun, he was asked to pay a fine of $5 and costs of $5.

Sidney Stern was arrested for not coming to a full stop before he turned on Western avenue. He testified he was going between three and five miles per hour and shifted gears before turning. After Braun told Stern he would have to put up a $200-bond or go to jail, Stern pleaded guilty and was fined $5 and costs in a like amount.

Defendant Paduano arrested Dewey Miller for going over a railroad track when the signal lights were flashing. Miller said that he stopped, saw the train several blocks away was not moving, and went on his way. Braun informed Miller he could be fined $200. Miller then pleaded guilty and paid a fine of $10.

Sylvester Pataczek, a truck driver for the Feldman Petroleum Company, was arrested for not stopping at an intersection. Pataczek denied he had failed to stop but was fined $10. Unable to pay the fine, Pataczek called up the owner of the truck, Abraham Feldman, who sent for it upon Braun's refusal to release Pataczek on his own recognizance. When Feldman came for the truck, Braun said police officers Greco and Paduano were holding it. They refused to release the truck until the fine was paid despite the fact the violation was committed by the driver, Pataczek, and not by the owner, Feldman. Finally, because the truck was needed immediately, Feldman paid Pataczek's fine.

Defendants' version of these and of the other arrests is somewhat different. They denied that these motorists were not honestly charged. However, the jury saw and heard the witnesses and could reasonably find the defendants had

the design to extort from and defraud the motorists and pursued a course tending toward its accomplishment. The jury could also reasonably believe from the acts and statements of president Special that he pursued the same course. It is argued that many of the motorists who testified for the People pleaded guilty and that these were admissions of their guilt. An equally logical inference which the jury could have drawn from the evidence is that the pleas were made to escape a trial after intimations by defendants that the result of a trial might be the imposition of a greater penalty.

In many cases before Braun the motorists were charged $5 costs even though they pleaded guilty. The statutory fee allowed to magistrates where a defendant pleads guilty is $2 and any charge more than $2 was excessive. Ill. Rev. Stat. 1937, chap. 53, par. 59.

Plaintiffs in error urge that a conversation between Braun and Captain Gilbert of the State's attorney's office was incompetent and should have been excluded. In this conversation Braun said records of the cases before him, sought to be inspected by the State's attorney, had been stolen. The conversation was not in the presence of any of the other defendants. Only declarations of a member of a conspiracy which are in furtherance of the common design are admissible in evidence against the other members. (*People* v. *Lloyd,* 304 Ill. 23; *Spies* v. *People,* 122 id. 1, 237.) For this reason the conversation was not admissible as against the other defendants. Upon objection to its admission, the court indicated it would not be competent unless connected up as to the other four defendants, and told the jury it should carefully differentiate between what might have been said by one of the five out of the presence of the others. While this was not a model statement of the law, the jury would understand from the objection and the statement that the testimony was admitted as to Braun only. It is insisted the court should have instructed the jury at the time the conversation was admitted that it was

not to be considered against the other defendants, but plaintiffs in error made no request for such an instruction. Under the best evidence rule, in order to admit parol testimony of the contents of the records of Braun, it was necessary to account for their disappearance. The conversation was admissible against Braun.

It is insisted that there was prejudicial error in permitting the People to introduce a large number of checks issued by the village of Dixmoor to Special and the defendant police officers. These checks were admissible to show that the defendants actually received payments of salaries from the general fund of the village which had been increased from the road and bridge fund, into which latter fund were paid the fines collected from motorists. The checks showing the sums which defendants were paid by the village were circumstantial evidence of the transactions charged in the indictment.

The checks also supported the auditor's report of the village finances which was introduced into evidence and taken into the jury room. Plaintiffs in error argue that a ledger should also have been allowed to go into the jury room. What exhibits shall go to the jury is in the sound discretion of the trial judge. (*People* v. *Levato,* 330 Ill. 498; *People* v. *Love,* 310 id. 558.) All the material in the ledger relevant to the case appeared also in the auditor's report which was allowed to go to the jury. The ledger included additional accounts which had little to do with the present cause and might have confused rather than aided the jury. No abuse of discretion appears in the action of the trial court. The receipts of moneys which defendant Braun and two other justices of the village turned into the village treasury also supported the auditor's report. Admission of the receipts was proper.

There was no error in admitting testimony of two arrests made in 1936, more than 18 months before the date of the conspiracy alleged in the indictment. (*People* v. *Raymond,*

296 Ill. 599; *Ochs* v. *People,* 124 id. 399; *Commonwealth* v. *Bartelson,* 85 Pa. 482.) Error is also urged in the admission of evidence given by Tatro who testified to a proceeding before Judge Braun at which defendant Bater was present. This testimony was not denied by either defendant, and it tended to show the manner in which Braun conducted his court. No prejudicial error appears.

It is next contended the court wrongly refused two instructions to the effect that the essence of conspiracy was the intent and unlawful agreement. The given instructions correctly defined the crime of conspiracy as the unlawful agreement to do an unlawful act or to do a lawful act in an unlawful manner. (*People* v. *Drury, supra; People* v. *Cohn, supra.*) Further given instructions informed the jury of all the elements and proofs necessary to establish a conspiracy and that such proofs must satisfy it of the guilt of defendants beyond all reasonable doubt. If the jury found defendants guilty of the unlawful combination, a criminal intention will be inferred from the nature and objects of the conspiracy. A guilty intention may be inferred from a criminal act. (*People* v. *Cohn, supra.*) The question of intent was adequately covered by the given instructions.

The final contention of the defendants is that the judgment should be reversed because of prejudicial conduct of the trial judge and State's attorney. None of the cases they cite support their argument. An objection was sustained to a single remark by the State's attorney and the jury was instructed to disregard it. There was no conduct on the part of the State's attorney or the court which warrants a reversal.

We have considered all the errors assigned. Defendants had a fair trial under the law and their conviction is based on evidence establishing their guilt beyond a reasonable doubt.

The judgment is affirmed. *Judgment affirmed.*