People of the State of Illinois, Appellee, v. Dorothy Gilmore, Appellant.

Gen. No. 51,390.

First District, Third Division.

October 31, 1968.

448

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael C. Zissman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a conviction for an unlawful sale of a purported narcotic drug. The defendant, having waived her right to trial by jury, was sentenced to the Illinois State Reformatory for Women for a term of two to five years.

The defendant contends on appeal that (1) she was not proven guilty beyond a reasonable doubt; (2) the one-count indictment was fatally defective because it alleged two separate and mutually exclusive offenses; (3) the indictment was fatally defective because it alleged the wrong person as the victim of the sale, and (4) the sentencing procedure was unfair and improper.

The indictment charged the defendant with "the offense of sale of purported narcotic drug in that [the defendant] knowingly offered to sell a narcotic drug and knowingly sold to August Irby for lawful money . . .

a quantity . . . of a certain nonnarcotic substance material, to-wit, purported heroin, in violation of Chapter 38, Section 22–3, of the Illinois Revised Statutes 1963. . . ."

The State's first witness was one Artis Irby who testified as follows: On December 30, 1965, he informed detectives Willis Nance and James Arnold that he could make a controlled purchase of narcotics. The officers gave Irby $24 in prerecorded currency and drove him to a location at 43rd Street and Calumet Avenue in Chicago where he met the defendant. Mr. Irby had known the defendant for about six years and admitted to having purchased heroin from her on prior occasions. The witness asked the defendant if she had any "stuff" and she replied affirmatively, took the $24, went into a building, and returned with a tinfoil package containing white powder. The package was immediately turned over to the police officers.

The two detectives testified that after the sale was made, they went to the apartment indicated by Irby and were told by one Robert Ward, the defendant's boyfriend, that the defendant was not in the apartment. The officers later returned and confronted the defendant in the apartment with the allegation that she had sold a narcotic drug to the informer, Mr. Irby. According to the officers, the defendant admitted to the sale and further stated that she had given the $24 to one Raymond "to cop some more jive with." Within a few minutes of the defendant's arrest, the police confronted Raymond, whereupon Raymond took the two officers to his apartment where the prerecorded currency was discovered. The package was taken to the Police Department's Crime Laboratory where its contents were found to be nonnarcotic.

The defendant testified in her own behalf and denied participation in the alleged sale but testified that she observed on that day a sale of narcotics from Robert

450

Ward to two men known as Earl and Kid Harry. The defendant admitted that she had known the witness, Irby, for a period of eight years but denied seeing him at any time during December 30, 1965. There was additional testimony by the defendant that she was an addict and that she had been working with Robert Ward "as a team" for two to three weeks prior to her arrest.

At trial both the prosecution and the defense counsel stipulated that the subject matter of the alleged transaction did not contain any narcotic or dangerous drug.

■ ■ The defendant's first contention is that she was not proven guilty beyond a reasonable doubt. It is her argument that the informer's testimony that the defendant said that she had some "stuff" and then gave him a packet of white powder provides no evidence of deceit or attempt to deceive the informer into believing that the nonnarcotic substance was in fact a narcotic substance. In the context of all of the evidence adduced at trial, it is impossible to accept this contention. There was testimony that Irby had purchased heroin from the defendant on earlier occasions. These earlier transactions support an inference that those earlier sales were part of a course of conduct which would induce the belief that what was now offered for sale was a narcotic drug. People v. Steele, 22 Ill2d 142, 174 NE2d 848. Webster's Third New International Dictionary, unabridged (1966) gives "narcotics" as one of its definitions for the word, "stuff." The United States Court of Appeals, Ninth Circuit, when confronted with the meaning of the word "stuff" in a narcotics case said:

"Appellant argues that the use of the word 'stuff' has no particular significance. It does in the dope trade. When appellant used the word in his conversation with Haley and it is examined within the context in which it was said, it carried a cus-

451

tomary meaning peculiar to the illegal narcotics trade. . . ." Parente v. United States, 249 F2d 752, 754.

The same Circuit in Enriquez v. United States, 293 F2d 788, 795, held that it was not error to allow a witness to testify that the word "stuff" meant heroin:

"The trial judge below, however, could not have been on the Federal Criminal Bench of California a month before learning that 'stuff' is a well-recognized synonym for narcotics of one type or another, usually heroin or some other opium derivative."

The attempt to deceive the victim was proven beyond a reasonable doubt.

The defendant also argues that the indictment was fatally defective because it joined in one count two mutually exclusive offenses and, as a result, the defendant was not properly advised of the charge against her. The text portion of the indictment clearly and unequivocally charged the defendant with the unlawful sale of a *purported* narcotic drug. However, for some unexplained reason, the indictment erroneously cited this offense as a violation of section 22-3 of chapter 38, Illinois Revised Statutes 1963. The cited section pertains only to offenses relative to narcotic drugs. The section pertaining to the sale of a purported narcotic drug which corresponds to the text of the indictment is section 22-40 of chapter 38. These two offenses are mutually exclusive for the obvious reason that a party cannot be charged with the sale of a narcotic drug while also being charged with the sale of a nonnarcotic substance. But the exclusiveness of the two statutory offenses is not dispositive of the issue before us.

■ ■ Section 111-3 of chapter 38 requires specific allegations to be contained in the indictment one of which is "(2) Citing the statutory provision alleged to

have been violated." It is the defendant's position that the incorrect citation was a substantive and fatal defect rendering the entire indictment void. It is well established that an indictment must adequately inform the accused of the offense with which he is charged so as to enable him to prepare his defense in order to fulfill the requirements of Article II, section 9 of the Illinois Constitution. People v. Moore, 368 Ill 455, 14 NE2d 494; People v. Braun, 375 Ill 284, 31 NE2d 287. Niceties and strictness of pleading are supported only where a defendant would be otherwise surprised at trial or be unable to meet the charge or to prepare his defense. People v. Woodruff, 9 Ill2d 429, 137 NE2d 809. In the case at bar, we fail to perceive how the miswriting in any way surprised or prejudiced the defendant. At no time did the prosecution endeavor to establish a case for a section 22-3 offense. In fact, both parties stipulated that the substance was not narcotic which would indicate that both parties were only concerned with a violation of section 22-40.

This court in People v. Hill, 68 Ill App2d 369, 216 NE2d 212, was confronted with a challenge to a criminal complaint which charged the defendant with theft but which not only failed to cite the correct statutory provision but even cited a nonexistent municipal ordinance as the provision alleged to have been violated. This court held that the complaint was fatally defective on other grounds but stated that the failure to cite the proper statutory provision is not a ground for dismissal under section 114-1(a) of chapter 38 or for arresting judgment under section 116-2(b) of chapter 38. The court emphasized that since the complaint adequately stated the nature and cause and the elements of the charge against the defendant, it was not subject to the attack that the conviction based upon it was void.

In People v. Hall, 55 Ill App2d 255, 204 NE2d 473, it was held that an erroneous citation of the applicable

statute which failed to conform to the textual allegations in the indictment was a formal defect and not a substantive defect which would render the indictment void. On page 259, the court said:

"It is equally apparent that the grand jury intended to charge this defendant with possession of burglar tools. The indictment says so in so many words. The facts alleged are the essence of that charge as set forth in the statute. It is readily apparent that a typographical error alone distinguishes what the grand jury did with what they manifestly thought they did. It is pure sophistry either to assert or to believe that this typographical error misled the defendant or his attorney as to the nature or the cause of the charge laid at his door. . . . It is our view that the incorrect citation of the statute in the record before us is a formal rather than a substantive defect."

This court is of the opinion that the miswriting of the citation in the instant case is a formal rather than a substantive defect regardless of whether the error be deemed a typographical error or a clerical oversight. Failure to cite a particular statutory provision cannot be equalized with failure to state the nature and elements of the offense charged. The latter is on a higher level and parallels the constitutional requirement that an accused shall have the right "to demand the nature and cause of the accusation." People v. Bridges, 67 Ill App 2d 236, 214 NE2d 539. Therefore, we conclude that this formal defect in the indictment does not make the conviction based upon it void.

■ ■ An additional argument advanced by the defendant is that a fatal variance resulted from the misstatement of the alleged victim's first name. At trial, the alleged victim, Mr. Artis Irby, testified that he had never been known as "August" Irby, which was the name

454

contained in the indictment. The object of requiring the indictment to name a victim is to provide identification so that the accused may prepare his defense and not be taken by surprise on the trial, and to prevent his being placed in double jeopardy for the same offense. People v. Nelson, 17 Ill2d 509, 162 NE2d 390. In People v. Jankowski, 391 Ill 298, 63 NE2d 362, the defendant was convicted of assault with intent to commit rape of "Katherine Balenda" while the indictment named "Catherine Valenta" as the victim. The Supreme Court held that the variance was not fatal since there was no evidence that the defendant had been misled or placed in double jeopardy. The record clearly established the identity of the victim as the person named in the indictment.

In the case at bar, we find no injury to the defendant as a result of the misstatement of the victim's first name. At the outset of the trial, Mr. Irby stated that his name was Artis and no objection to the indictment was entered at that time. The defendant could not have been surprised or misled in view of the fact that she herself testified that she had known Mr. Irby for a period of years. We find no resultant injury due to the miswriting, and the defendant's failure to object at the proper time in the trial court waives her right to now on appeal take advantage of this mere formal defect.

The final contention of the defendant is that the hearing in mitigation and aggravation was improper and unfair, and therefore the sentence should be reduced or, alternatively, the cause be remanded for a new presentence hearing. The record reveals that at the hearing in mitigation and aggravation, the trial judge specifically stated that he relied on two factors in his denial of probation and sentencing of the defendant. One factor relied upon was the fact that the informer, Mr. Irby, had been required to testify in open court thereby destroying his usefulness as a police informer since his identity had been disclosed. The trial judge also heavily relied

upon the testimony of officer Arnold at the hearing that he had received "information" from various informers that the defendant had been engaged in the sale of narcotics and was not simply an addict as she contended. The officer's testimony was admitted over the objection of defense counsel.

It is well established that a hearing in mitigation and aggravation is not strictly a trial and that the trial court is not bound by the usual rules of evidence found in criminal prosecutions but may search anywhere within reasonable bounds for other facts tending to aggravate or mitigate the sentence. People v. Mace, 79 Ill App2d 422, 223 NE2d 725. The power given this court to reduce sentences (Illinois Supreme Court Rule 615, Ill Rev Stats 1967, c 110A, § 615) is applied with considerable caution and circumspection. Yet we are of the opinion that circumstances in the instant case require such a reduction. The informer's anonymity had been destroyed as a result of the defendant's asserting a constitutionally protected right to confront her accused. See: Pointer v. Texas, 380 US 400; Roviaro v. United States, 353 US 53. The exercise of such a right should not have been taken into consideration by the judge when imposing sentence. In addition, the trial court should not have so relied on the officer's mere "information" that the defendant had been a seller in the narcotics trade. Due to the reliance placed on these two factors, we believe that this is a proper case for the use of our power to reduce the defendant's punishment.

For the reasons given, the defendant's conviction is affirmed and her sentence is reduced to a term of one to three years in the Illinois State Reformatory for Women.

Judgment, as modified, affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.