JESSIE DICKERSON, Appellant, *vs.* FRANK W. DICKERSON *et al.* Appellees.

*Opinion filed October 28, 1926.*

1. DEEDS—*when delivery of deed to third person is a valid delivery.* To constitute a valid delivery of a deed it is not necessary that the grantor deliver the same personally to the grantee, but where the grantor makes and acknowledges his deed and delivers it to some third person to deliver to the grantee, and thereby unconditionally and without reservation parts with its custody and all control over it, there is a valid delivery of the deed.

2. SAME—*subsequent possession of a deed cannot affect completed delivery—presumption.* Where a voluntary conveyance is beneficial to the grantee its acceptance by the grantee is presumed in the absence of evidence to the contrary and the grantee thereby becomes entitled to the property, and his right thereto cannot be affected by the subsequent act of the grantor in fraudulently obtaining possession of the deed.

3. EVIDENCE—*want of charge for services does not take away privilege of communication to an attorney.* Where a communication between an attorney and client is of such a nature as to be privileged, it makes no difference that the client offered no com-

pensation and the attorney neither made nor expected to make any charge for his services.

4. SAME—*when communication is privileged although in presence of third party.* The rule that a communication between attorney and client is not privileged where it takes place in the presence of a third party does not apply where the third party was also an attorney for the client, and, having come from another State, was seeking advice as to the law in Illinois.

5. SAME—*what determines whether communications with attorney are privileged.* Whether or not communications with an attorney are privileged depends upon the circumstances of each particular case, but in any case they must have been confidentially made and the confidence must have been essential to the satisfactory maintenance of the relation, and the injury that would result to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of the litigation.

6. SAME—*privilege in respect of communications with attorney may be waived.* While communications with an attorney when a client confidentially seeks legal advice are permanently protected from disclosure by the client himself or by his attorney, this protection may be waived by the client, as it is for his benefit.

7. SAME—*communications not confidentially made are not privileged.* To be privileged, communications made by a client to his attorney must necessarily have been confidential, and communications made for the purpose of being disclosed by the attorney, or when disclosure is intended, as where the attorney witnesses a will or deed for his client, do not come within the rule of privilege.

8. SAME—*communications to an attorney acting as scrivener, only, are not privileged.* Where an attorney is employed by his client to engage in some activity not within the province of an attorney at law, such as a scrivener, agent or trustee, the attorney is a competent witness to show the facts constituting the appointment or employment to act in such capacity.

9. SAME—*attorneys holding deeds in escrow may testify as to their delivery.* Where a client makes attorneys depositaries of deeds, with instructions to deliver them to the grantees at the client's death, the communications made by the client in regard to the delivery and as to his intentions do not come within the rule of privilege, and although the client came to the attorneys for advice as to the reservation of a life estate in himself and expressed a desire that the matter be confidential during his lifetime, the attorneys may testify, after the death of the client, as to the facts and circumstances attending the delivery of the deeds to them.

Appeal from the Circuit Court of Knox county; the Hon. Willis F. Graham, Judge, presiding.

Marsh, Rice, Lewis & Thompson, for appellant.

James E. Davis, for appellees.

Mr. Justice Heard delivered the opinion of the court:

January 26, 1925, James T. Dickerson, aged seventy-five years, died intestate at his home in Knoxville, in Knox county. He left him surviving no children or descendants of deceased children but left as his heirs his widow, Jessie Dickerson, the appellant, and certain brothers and sisters and nephews and nieces, the children of deceased brothers and sisters. He had been the owner of about 350 acres of farm land in Knox county and a home in Knoxville, where he and his wife resided at the time of his death. After his death his widow was appointed as administratrix of his estate. She thereafter filed her bill in the circuit court of Knox county asking for the assignment of dower and homestead in the premises and for the partition of all the real estate involved herein, claiming that she was the owner in fee of a one-half interest in all of said real estate. In her bill she alleged that after the death of Dickerson three quit-claim deeds to his farm lands, to Frank W. Dickerson, Lottie Dickerson Seamen and James Everett Mason, respectively, were found in a safety deposit box in the First National Bank at Maquon, but averred that these deeds were of no force or effect for want of delivery in the lifetime of Dickerson. The three grantees in the deeds were made parties defendant and filed answers, in which they averred that Dickerson did not own these lands at the time of his death but that the three grantees owned the lands by virtue of the deeds, and that the deeds had been delivered by Dickerson in his lifetime by giving them to Moreland &

Moreland, attorneys of Galesburg, for the grantees, to be recorded for them at the death of Dickerson. The cause was referred to a master in chancery, who heard the evidence and by his conclusions found that the three deeds were legally delivered by Dickerson in his lifetime by giving them to Moreland & Moreland for the respective grantees, and that the grantees were now the owners of such lands, subject to the dower right of the widow. Objections and exceptions to the master's report were overruled and a decree entered by the court in accordance therewith. The cause is now in this court upon appeal from the decree.

There is very little contradiction in the evidence upon the material points, the main questions in the case being as to the admissibility of certain evidence and the conclusions to be drawn from the evidence.

Armor Moreland and John R. Moreland testified that in September, 1913, Dickerson came to their law office in Galesburg and stated that he wished to make conveyances of lands to Frank W. Dickerson, James Everett Mason and Lottie Dickerson Seamen; that he had been planning for a considerable time the making of these conveyances but that his wife would not join with him; that he wished to know if he could make the conveyances without his wife joining; that after a search of the authorities they advised him that he could make the conveyances and that the same would in no way interfere with his wife's dower; that the deeds could be executed and that it would be necessary for him to deliver them; that he could not make the deeds and still retain possession of them or of the land, but that if he desired to retain any control over the land he could reserve a life use therein to himself, but that the deeds would have to be delivered and the title divested at the time of the execution of the conveyances; that Dickerson said that was what he wanted to do but that he did not want the deeds put on record at that time and made public as he and his wife were not on any too friendly terms and if she found

out about it things would be unpleasant for him at home; that he said he desired to deliver the deeds to the Morelands to keep and to record them upon his death; that they advised him that if he delivered the deeds to them he was parting with the title to the land and to the deeds and that they could not return the deeds to him but that they were beyond his control; that Dickerson said that was just what he wanted to do; that the Morelands prepared the three deeds in question and Dickerson signed them; that John Moreland took the acknowledgment and passed the deeds back to Dickerson; that Dickerson took the deeds, looked them over, passed them back to John Moreland and told him to take them and keep them for the grantees in the deeds, and that the Morelands then advised him that the deeds would have to be kept and that he had no further control over them; that one of the Morelands said to him, "Now, Mr. Dickerson, we want a statement from you showing that you have delivered those deeds to us and that they are delivered to the grantees and to be held for them and we are to record these deeds upon your death;" that Dickerson told them to prepare such a statement; that such statement was prepared, signed by Dickerson, given to the Morelands and retained by them until the time of the trial; that the Morelands retained possession of the three deeds until May 17, 1921, at which time Dickerson came to their office and said that he had talked the matter over with the grantees in the deeds and that they desired that the deeds be taken and placed in the bank at Maquon; that he wanted to know if that would be all right with the Morelands; that they said if it was satisfactory to the grantees it was satisfactory to them but that they could not give the deeds to him to do as he pleased with them; that Dickerson said all he wanted to do was to put them in the bank at Maquon for the grantees; that they had other papers in the bank and they wanted the deeds put with their other papers; that

the deeds were then given to Dickerson and John Moreland made a notation upon the written statement made by Dickerson at the time of the execution of the deeds; that this notation was read to Dickerson, who said it was all right; that nothing was said about any pay for their services and that they never received any pay therefor.

The statement given by Dickerson to the Morelands, with the notation thereon, is as follows:

"GALESBURG, ILL., *September 5th, 1913.*
"*Messrs. Moreland & Moreland, Galesburg, Illinois.*

"I this day deliver to James Everett Mason deed executed by me dated September 5th, 1913, to lands in Knox County, Illinois, as described therein.

"And deliver to Frank W. Dickerson deed executed by me dated September 5th, 1913, to lands in Knox County, Illinois, as therein described.

"And deliver to Lottie Dickerson Seamen deed executed by me dated September 5th, 1913, to lands in Knox County, Illinois, as therein described and request that you have same recorded for them at my death.

JAMES T. DICKERSON."

"All deeds returned to James T. Dickerson on May 17, 1921, in person by John R. Moreland, to be deposited in Maquon bank for grantees therein named."

The safety deposit box in the bank at Maquon was one to which Dickerson alone had access. The president of the bank testified to the opening of the box after Dickerson's death and finding the three deeds therein, and that he thought there was one share of bank stock belonging to Everett Mason and one share belonging to Mrs. Seamen in the box and that the bank stock still remained in the box at the time of the trial.

It is contended by appellant that Moreland & Moreland being attorneys for and legal advisers of James T. Dickerson in his lifetime with reference to the matter in controversy herein, all communications, oral and written, made by Dickerson to them were privileged, and that the More-

322—32

lands should not have been allowed to testify to the same. It is also contended that even if their evidence were competent, it does not show such a delivery of the deeds as to render them effective to pass title to the grantees.

To constitute a valid delivery of a deed it is not necessary that the grantor deliver the same personally to the grantee, but where the grantor makes and acknowledges his deed and delivers the same to some third person to deliver to the grantee, and thereby unconditionally and without reservation parts not only with its custody but also with all control over the same, this is in law a valid delivery of the deed; (*Thompson* v. *Candor,* 60 Ill. 244; *Cales* v. *Dressler,* 315 id. 142; *Masterson* v. *Cheek,* 23 id. 72; *Weir* v. *Hann,* 301 id. 422;) and where, as in this case, there is a voluntary conveyance, beneficial to the grantee, its acceptance by the grantee, in the absence of evidence to the contrary, is presumed, (*Rivard* v. *Walker,* 39 Ill. 413,) and the grantee thereby becomes entitled to the property, and his right thereto cannot be affected by the subsequent act of the grantor in fraudulently obtaining possession of the deed. In the present case Dickerson made and acknowledged the deeds. He reserved a life estate to himself, thereby evincing his intention that the deeds should take effect immediately. The conveyances were voluntary and beneficial to the grantees. There is no evidence in the record that they were not accepted by them and such acceptance is presumed. They were, therefore, valid conveyances of the premises from Dickerson to the grantees if the competent evidence in the case shows that Dickerson delivered the deeds to Moreland & Moreland, and that he thereby unconditionally parted not only with the custody of the deed but also with all control over the same.

It is contended by appellees that the relation of attorney and client did not exist between Dickerson and the Morelands, for the reason that they made no charge and received no compensation for their services. Where communications

between an attorney and client are of such a nature as to
be privileged, it makes no difference that the client offered
no compensation and the attorney neither made nor ex-
pected to make any charge for his services. *March* v. *Lud-
lum,* 3 Sandf. Ch. 35; 1 Pomeroy's Eq. Jur. 200; *People*
v. *Stout,* 3 Park. 676; *Andrews* v. *Simms,* 33 Ark. 733;
*Davis* v. *Morgan,* 19 Mont. 141; *Sheehan* v. *Allen,* 67 Kan.
712; *Goltra* v. *Wolcott,* 14 Ill. 89.

It is contended by appellees that the communications
having been made in the presence of a third person, they
for that reason were not privileged. The general rule is
that where a communication between attorney and client
takes place in the presence of a third party such communi-
cation is not privileged; but that rule does not apply to
the present case, for the reason that the third person who
was present was an attorney from Oklahoma who was act-
ing in the premises for Dickerson, and who, together with
Dickerson, applied to Moreland & Moreland for advice as
to the Illinois law applicable to the making and delivery of
voluntary conveyances, with which the Oklahoma attorney
was not familiar.

It is contended by appellees that the Morelands were
simply acting as scriveners in the preparation of the deeds
and that the relation of attorney and client did not exist.
Dickerson had two interviews with the Morelands. The
first interview was for the purpose of getting their advice
as to what the Illinois law was. The Morelands, after get-
ting a statement of facts from Dickerson and his Oklahoma
lawyer, looked up the Illinois law with reference to those
facts, and upon a second interview they stated to them
what the Illinois law was with reference thereto, and there-
upon the deeds were executed. Here Dickerson came to
the Morelands not only for the purpose of having a deed
prepared by a scrivener but he came seeking advice, and
therefore the rule laid down in *Champion* v. *McCarthy,*
228 Ill. 87, and other like cases, that where the transaction

between the attorney and client is the preparation of a deed or contract in accordance with the directions of the client, and no legal advice is asked or required, the reasons or motives moving the client to make the deed or contract, if stated to the attorney, are not privileged, does not apply. It is essential to the ends of justice that clients should be safe in confiding to their counsel the most secret facts, and to receive advice in the light thereof, without peril of publicity. Disclosures made to this end should be as secret and inviolable as if the facts had remained in the knowledge of the client alone. *Bruley* v. *Garvin,* 105 Wis. 625.

It is often a most difficult question for a court to determine whether or not a communication between attorney and client is privileged. It is sometimes only temporarily privileged, as in the case of an attorney who prepares a will for a client and witnesses the same, the privilege only existing during the lifetime of the client. And it sometimes happens that a portion of a transaction between an attorney and client is privileged and another portion is not. An attorney sometimes acts in a dual capacity with reference to his client, and by reason thereof a communication which otherwise would be privileged is not so privileged. Whether or not communications between an attorney and a third person are privileged depends upon the circumstances of each particular case. Wigmore on Evidence (vol. 5, sec. 2285,) states that four fundamental conditions may be predicated as necessary to the establishment of a privilege against the disclosure of communications by persons standing in a given relation: (1) The communications must originate in a confidence that they will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communications must be

greater than the benefit thereby gained for the correct dis-
posal of the litigation.  In section 2292 the general prin-
ciple is stated that where legal advice of any kind is sought
from a professional legal adviser in his capacity as such,
the communications relating to that purpose, made in con-
fidence by the client, are at his instance permanently pro-
tected from disclosure by himself or by his legal adviser
except the protection be waived.  The privilege being for
the benefit of the client it may be waived by him.  It is
also to be noted that the element of confidentiality must
be essential to the full and satisfactory maintenance of the
relation between the parties, and therefore communications
made by the client to the attorney for the purpose of being
disclosed by him do not come within the rule of privilege.
(*Standard Fire Ins. Co.* v. *Smithhart,* 183 Ky. 679; *Ros-
seau* v. *Bleau,* 30 N. E. 52; *Henderson* v. *Terry,* 62 Tex. 28;
*Waldo* v. *Beckwith,* 1 N. M. 182.)  Where an attorney is
employed by his client to engage in some activity not within
the province of an attorney at law, such as a scrivener, agent
or trustee, the attorney is a competent witness to show the
facts constituting the appointment or employment to act in
such capacity.  (40 Cyc. 2365.)  Obviously, where a trans-
action between attorney and client is of such a nature that
a disclosure by the attorney is necessary to effectuate the
intention of the client the transaction does not originate in
a confidence that the transaction will not be disclosed, and
the element of confidentiality is not essential to the full and
satisfactory maintenance of the relation by the parties and
is therefore not privileged.  Accordingly, an attorney who
witnesses a will or a deed for his client is by reason of the
nature of the act competent to testify thereto.  Where a
client makes an attorney a depositary of a deed with in-
structions to deliver the same to some third person, in the
nature of things the intention of the client can only be ef-
fectuated and the deed given validity by a disclosure on
the part of the attorney to third persons of the communi-

cation made to him by the client, and such communication does not come within the rule as to privileged communications. Therefore, in such case the attorney may testify to the circumstances attending the delivery of the deed to him, together with the instructions which he received from his client. *Scott* v. *Harris,* 113 Ill. 447; *Gronewold* v. *Gronewold,* 304 id. 11.

The Morelands, as shown by the evidence, during the transaction occupied a triple relation to Dickerson. In the first place, Dickerson came to them seeking advice, which they gave, and the relation of attorney and client existed between them; they then became his scrivener in the making of the deed; and thereafter they became depositaries or trustees for the purpose of receiving the deed for the grantees and holding the same for them during the lifetime of Dickerson and after his death recording the same for their benefit. Manifestly, while the relation between them was intended to be confidential during the lifetime of Dickerson, it was not the intention of the parties that the instructions given to the Morelands by Dickerson, and the facts and circumstances attending the delivery of the deeds by Dickerson to the Morelands, should remain so after his death, and they were competent witnesses to testify to such facts and circumstances and the instructions given to them by Dickerson. Such testimony being competent, it necessarily follows that the decree entered by the circuit court was in accordance with the facts and the law applicable thereto.

The decree of the circuit court is affirmed.

*Decree affirmed.*