THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES F. VAUGHN, Defendant-Appellant.

(No. 73-97;

Fifth District—February 20, 1975.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John H. Ward, State's Attorney, of Taylorville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

James F. Vaughn was convicted of murder after a jury trial in the Circuit Court of Christian County and was sentenced to the penitentiary for a term of 40 to 80 years. Two other defendants, John D. Knippenberg and John M. Burton, indicted with defendant for the same offense, were in separate trials convicted and sentenced, respectively, to terms of 30 to 60 and 22 to 50 years. On this appeal, defendant contends that he was not proven guilty beyond a reasonable doubt because of weak identification evidence and that the trial court erred in failing to sequester the jury. In addition, he contends that his sentence was excessive in view of the lesser sentences given to his two codefendants.

The offense occurred in Taylorville on April 22, 1972, at about 9:35 A.M. In an attempted robbery of a jewelry store the owner was shot and killed. Two men were seen leaving the store, running to a nearby parking lot where a third man picked them up in a car and sped away. The State presented four eye-witnesses who positively identified the defendant as one of the two men who left the store immediately after the shooting.

A mailman who had just delivered mail to the store saw the two men enter. He heard a "pop" while they were in the store and saw them leave. The mailman described the men to police and positively identified the defendant at trial as one of the two. A second witness was in a

barber shop across the street. He also saw the two men enter. When they left, the owner of the store stumbled out, bleeding and holding his stomach. The witness chased the men, saw them enter a car, and noted the color and license number of the car. He also identified the defendant. Two other occurrence witnesses identified the defendant and gave police an accurate description of the car and its license number.

Two witnesses from an auto dealership testified that defendant had rented the car used in the robbery and identified by the eyewitnesses.

Friends of the three suspects, Gene Beaty and Beaty's wife, testified that they had loaned defendant the clothes identified by the witnesses and had provided defendant with false identification papers after the robbery. Beaty testified that defendants Burton and Knippenberg had discussed the robbery with him and that defendant had admitted shooting the store owner.

Marilyn Miller, Burton's girl friend, testified that she drove defendant and Burton to Cedar Rapids, Iowa, and gave them money. Burton later disposed of the weapon but left shell casings in the car. Defendant went to California where he was arrested.

A ballistics expert testified that he could not positively connect the slug recovered from the store with the shell casings found in Marilyn Miller's car but stated that the slug could have been fired from a .357 magnum. The evidence of other witnesses showed that Burton possessed and had carried a .357 magnum.

Defendant testified that he had been with Knippenberg and Burton for two days prior to the attempted robbery, but denied taking any part in the crime. He stated that he had rented the green Ford to look for work and had driven to Peoria where he met his two friends. Beaty, a friend of Knippenberg, provided them with a room in a motel. On Thursday, defendant and Burton tried to steal some boat motors but were unsuccessful. On Friday, Knippenberg and Beaty committed a burglary of an antique store. A robbery was discussed, but defendant declined to take part because the car was rented in his name. He last saw Knippenberg at 1 A.M. the morning of the day of the crime. Defendant and Burton went back to the motel, where Beaty asked to borrow the Ford to drive to Springfield. Defendant gave him the keys, and Beaty and Burton left together after arrangements were made for defendant to meet them before noon at a bar in Springfield to return the car to the rental agency. Defendant stated that he spent the next few hours in various bars, that he met a girl, a complete stranger, and convinced her to drive him to Springfield about 11 or 11:30 A.M. He found the Ford parked in the lot next to the designated bar and found Burton, who looked nervous and shaky. Defendant drove the Ford to a friend's

house and first heard about the armed robbery and the death of the store owner on the car radio. He became frightened because his rental car had been identified and because he was on parole. Knippenberg promised to dispose of the car and defendant, and Burton returned in another car to Marilyn Miller's trailer in Peoria. Beaty arrived, and the morning's events were discussed. Defendant said that Knippenberg, Burton and Beaty admitted having tried to rob the store and that Beaty said he had shot the owner. It was decided that Knippenberg and defendant would go to Cedar Rapids to seek help from Beaty's friend, and that the two of them would then go to California. Defendant described his trip to California and his subsequent arrest, stating that the reason he fled was that he was afraid the police would connect the automobile to him and attempt to have his parole revoked.

■■■ Defendant first contends that though most of the evidence presented by the State was not disputed, the evidence linking him with the offense charged was so unsatisfactory, in light of his denial of involvement, that a reasonable doubt of his guilt exists. He attacks the identification testimony as weak and unbelievable, and accuses Beaty of being an accomplice who served his own purposes by attributing the crime to defendant in the hope of obtaining exoneration or leniency. Defendant continues to maintain that his flight was motivated solely by his desire to avoid parole revocation. In effect, defendant is contesting the weight of the evidence and asserting the credibility of his testimony as superior to that of the other witnesses. It has long been established in Illinois that such matters are the prerogative of the jury and that a court of review cannot substitute its judgment for that of the jury. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631 (1972); *People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697 (1968); *People v. Nicholls*, 44 Ill.2d 533, 256 N.E.2d 818 (1970).) It is equally well established that the testimony of one witness is sufficient to convict, even if contradicted by the accused, provided the witness is credible and the accused was viewed under such circumstances as to permit positive identification. (*People v. Brinkley*, 33 Ill.2d 403, 211 N.E.2d 730 (1965); *People v. Washington*, 26 Ill.2d 207, 186 N.E.2d 259 (1962); *People v. Williams*, 96 Ill.App.2d 64, 237 N.E.2d 750 (1968).) Even if Beaty were to be considered an accomplice, the rule is that the testimony of an accomplice, though received with caution, is sufficient to sustain a guilty verdict where the jury is convinced of its credibility. (*People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490 (1967).) Here defendant was observed in broad daylight by four witnesses who described him and his clothing, were able to pick his picture out of a group of police photographs, and who positively identified him at trial. The credibility of the observations of the witnesses as well as

Beaty's background and involvement in this affair were forcefully argued before the jury. Presumably the jury took these factors into consideration during their deliberations and chose to believe the State's witnesses and reject the testimony of defendant. We agree. The evidence against defendant was overwhelming to establish his guilt.

Next defendant contends that the court erred in refusing to sequester the jury. Defendant filed a motion for change of venue and for sequestration of the jury and attached to the motion a series of newspaper articles recounting the events of the previous trials of the other defendants. He does not argue here that it was improper to deny the change of venue nor that the news articles were spectacular or inflammatory. Rather he contends that they suggested defendant's guilt by association and, as such, demonstrated the probability that prejudice to defendant would occur in his trial unless the jury were sequestered.

Section 115—4(m) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 115—4(m)) permits the separation of jurors from each other during trial "* * * except that no such separation shall be permitted in any trial after the court, upon motion by the defendant or the State or upon its own motion, finds a probability that prejudice to the defendant or to the State will result from such separation."

■■ We agree that it is wise and preferable to sequester a jury in a murder case. However, failure to do so in a particular case does not constitute reversible error unless the record as a whole demonstrates that defendant did not receive a fair trial before an impartial jury. As stated in *People v. Yonder*, 44 Ill.2d 376, 256 N.E.2d 321 (1969), the decision to sequester a jury is within the sound discretion of the trial court, and if adequate warnings are given by the court and actual prejudice is not demonstrated by the defendant, the failure to sequester is not reversible error. Here the record shows that repeatedly throughout the trial the court cautioned the jury not to discuss the case among themselves or with anyone else, not to read any newspaper accounts or listen to television reports about the trial and that they were to determine the case solely from what was heard in the courtroom. Defendant has not demonstrated, nor does he argue, that the jury actually read any newspaper accounts or listened to any radio or television reports that may have influenced them to his prejudice. Rather, his argument is based solely upon conjecture and the possibility that the jury may have done so and may have been prejudiced. Such argument has been specifically held insufficient to require reversal of a conviction. (*People v. Cesarz*, 44 Ill.2d 180, 255 N.E.2d 1 (1969); *People v. Endress*, 5 Ill.App.3d 821, 284 N.E.2d 725 (1972).) In *People v. Cox*, 74 Ill.App.2d 342, 220 N.E.2d 7 (1966), cited by defendant in support of his contention, the court held that it

was reversible error for the trial court to deny the motion of the defendant to interrogate a nonsequestered jury as to whether they had read a particular newspaper article prejudicial to him. In effect, the court stated that the defendant had the right to demonstrate the probability of prejudice, and that by denying him that right no way existed to determine what effect the published matter may have had on defendant's trial. Such is not the case here; we find nothing in the record that suggests that defendant did not receive a fair trial. We conclude that no error resulted from the trial court's refusal to sequester the jury.

■■ Finally, defendant contends that his sentence is excessive in view of the lesser sentences given to each of his codefendants for the same offense. He admits that a disparity of sentences by itself does not warrant a reduction of the greater sentence, (*People v. Thompson,* 36 Ill.2d 478, 224 N.E.2d 264 (1967); *People v. Dandridge,* 9 Ill.App.3d 174, 292 N.E.2d 51 (1973); *People v. Stapelton,* 5 Ill.App.3d 219, 283 N.E.2d 117 (1972)), but contends that the record as a whole does not warrant such disparity here. In support of his contention he cites *People v. Jones,* 118 Ill.App.2d 189, 254 N.E.2d 843 (1969), wherein a sentence of 10 to 12 years for burglary was reduced to 6 to 12 years to conform to a sentence imposed on a codefendant. In that case the court found that since both defendants had participated equally in the burglary and had similar prior records, the only reasonable inference to be drawn was that one defendant was penalized for exercising his constitutional right to a trial. Under these circumstances the court held that fundamental fairness required a reduction of the greater sentence. We do not believe the same situation is present in the case before us. All of the defendants in this case were convicted after jury trials. In imposing sentence on Vaughn, the trial court took note of the disparity between the sentence imposed here and those given the other defendants. He considered defendant's lengthy criminal record, the fact that he was presently on parole and that the evidence indicated that Vaughn had actually fired the gun. Under such circumstances we find no reason to reduce the sentence imposed.

The judgment of the Circuit Court of Christian County is affirmed.

Affirmed.

EBERSPACHER and G. MORAN, JJ., concur.