THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN D. KNIPPENBERG, Defendant-Appellant.

(No. 73-115;

Fifth District—December 3, 1975.

Robert Broverman, of Taylorville, for appellant.

John H. Ward, State's Attorney, of Taylorville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant-appellant, John D. Knippenberg, was convicted of murder after a jury trial in Christian County and sentenced to serve from 30 to 60 years' imprisonment.

On appeal, defendant alleges that he was not proven guilty beyond a reasonable doubt; that the court erred in allowing the State to impeach the defendant with a statement obtained from a defense investigator;

that the court unduly restricted cross-examination of a State's witness as to bias; that the court erred in refusing to admit into evidence a note written by defendant to a codefendant shortly after the offense; and that the sentence imposed is excessive.

Defendant and two codefendants, James Vaughn and John Burton, were tried separately and convicted of the murder of a jeweler in Taylorville, Illinois, during an attempted robbery. The facts of the occurrence and much of the relevant evidence have been set forth in detail in *People v. Vaughn*, 25 Ill.App.3d 1016, and will not be repeated here except where necessary.

Two occurrence witnesses identified defendant as one of two men who ran from the jewelry store immediately after the shooting. The other man was positively identified as Vaughn. (See *People v. Vaughn.*) In addition, Gene Beaty, a friend of all three defendants, testified that defendant and Vaughn arrived at his home in Peoria 3 days before the offense in a car later positively identified as the car used to escape from the Taylorville jewelry store. Beaty further testified that defendant told him the evening after the offense that he and Vaughn had attempted to rob the jewelry store but that Vaughn had killed the jeweler. Marilyn Miller, codefendant Burton's girlfriend, who had been living with Beaty and his wife, testified that, at Burton's request, she drove defendant and Vaughn to Iowa, during which they told her that they had accidentally shot a man during a robbery attempt. Defendant and Vaughn then went to California where they were subsequently apprehended. Miller and Burton returned to Peoria.

The defendant presented two alibi witnesses who testified that defendant came to their house in Hillsboro, Illinois, early in the morning of the day of the offense and stayed from 2 to 3 hours. Defendant was driving a car other than that later identified as a car rented by Vaughn and used in the commission of the attempted robbery and murder.

Defendant testified that he had met with Burton, Vaughn and Beaty in Peoria the day before the offense and agreed to meet Burton and Vaughn early the next morning at a restaurant in Taylorville to discuss the robbery of the jewelry store. He arrived at the restaurant at the appointed time but did not find Burton or Vaughn. Defendant then drove to Peoria to the house where Vaughn and Burton had stayed the previous night and found a note purportedly from Vaughn directing him to meet Vaughn and Burton at a tavern in Springfield. Defendant drove to Springfield where he met a man who told him of the robbery and murder. He subsequently met with Vaughn and Burton at Marilyn Miller's home in Peoria. Defendant admitted having driven with Burton,

Vaughn, and Miller to Iowa but denied having admitted any involvement in the offense to Miller. Defendant and Vaughn then drove to California and were arrested.

George Smith was called by the State as a rebuttal witness and testified that several days before the offense he met with defendant in Taylorville and that defendant indicated his plans to "get the joint next door," apparently referring to the jewelry store. On surrebuttal, defendant admitted having had a conversation with Smith a few days before the incident but denied the admission related by Smith.

Defendant first contends that he was not proven guilty beyond a reasonable doubt. The claim is based first on discrepancies in the eyewitness testimony and his alibi evidence which purportedly established that he was not present at the scene of the offense. Secondly, defendant argues that, even assuming that he was present, the evidence did not establish his guilt under accountability principles.

■■■ We believe that the evidence overwhelmingly established that defendant was present at the scene of the offense and participated in the attempted robbery of the jewelry store culminating in the murder of the proprietor. Two eyewitnesses positively identified defendant at trial and two other witnesses testified that defendant admitted participation in the offense. Defense counsel competently and aggressively cross-examined these witnesses and brought before the jury what conflicts and discrepancies existed in the evidence. It is the province of the jury to weigh the evidence and judge the credibility of the witnesses. That determination will not be overturned unless it is so clearly and palpably contrary to the evidence as to justify a reasonable doubt of defendant's guilt. (*People v. Stringer,* 52 Ill.2d 564; *People v. Mills,* 40 Ill.2d 4.) "It is equally well established that the testimony of one witness is sufficient to convict, even if contradicted by the accused, provided the witness is credible and the accused was viewed under such circumstances as to permit positive identification." (*People v. Vaughn,* 25 Ill.App.3d 1016, 1019. See also *People v. Brinkley,* 33 Ill.2d 403; *People v. Washington,* 26 Ill.2d 207.) Nor is the jury required to believe the alibi testimony of the accused, but may judge its truthfulness along with the other evidence. (*People v. Clark,* 52 Ill.2d 374.) The record affords no room for doubt that defendant was present and participated in the attempted robbery.

■■ Defendant contends, however, that the State produced no evidence to establish that defendant intended to promote or facilitate the murder of the shop owner. Although slightly different facts were involved, the following language from *People v. Johnson,* 55 Ill.2d 62, 67, adequately disposes of defendant's contentions:

The doctrine of felony-murder is part of our law. Section 9—1

of the Criminal Code provides, in part: '(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death: \* \* \* (3) he is attempting or committing a forcible felony other than voluntary manslaughter.' (Ill. Rev. Stat. 1967, ch. 38, par. 9—1(a)(3).) And of course one who aids or abets the planning or commission of a crime is legally accountable for the conduct of the principal. (Ill. Rev. Stat. 1967, ch. 38, par. 5—2.) Thus, 'Where murder is committed during a robbery, all participants in the robbery are deemed equally guilty of murder and it is immaterial who fired the fatal shot. [Citations.]' (*People v. Weber*, 401 Ill. 584, 604; \* \* \*."

We believe that evidence clearly established that defendant, with the intent to commit the underlying offense, aided Vaughn and Burton in the planning and commission of the offense and, as such, was "legally accountable" for the murder under section 5—2 of the Criminal Code of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 5—2).

Defendant next contends that the court unduly restricted cross-examination of a State's witness as to bias in favor of the prosecution. The witness, James Wingo, was one of two eyewitnesses who identified defendant. Prior to his testimony, the court granted the State's motion *in limine* to prevent defendant from inquiring into Wingo's past felony record. Wingo then testified that he saw defendant as he ran past him near the store and positively identified defendant in court. On cross-examination, defense counsel brought out information that Wingo had not given a statement to the police about the incident until over three months after the shooting, although Wingo apparently had identified photographs of the defendant 2 days after the shooting. Wingo explained that he gave the statement when asked by the police. At that point, counsel inquired, "When was this in relationship to an adoption proceeding that is pending in this County?" Upon the State's objection, arguments were heard outside the presence of the jury. Defense counsel informed the court that the Assistant State's Attorney trying the case had been retained by Wingo in an adoption proceeding. Without more specificity, defense counsel stated, "I just feel it's a relevant matter." The Assistant State's Attorney stated that the adoption proceedings were in no way connected to the criminal matter, that she was being paid by Wingo for the legal services and concluded, "I'm not buying his testimony." The court sustained the objection to the line of questioning.

Defense counsel then made an offer of proof that Wingo, in an interview with defense counsel had denied having been convicted of a felony. On this ground the court reversed its ruling on the previous motion *in*

*limine* and allowed the defense to inquire about Wingo's record. Before the jury, counsel elicited the information that Wingo had been convicted of a felony and had served a sentence in a penitentiary and that he had misrepresented these facts previously to defense counsel. On redirect, Wingo testified about the offense and the sentence served.

■■ Defendant argues that the court erred in refusing to allow him to inform the jury of the professional relationship between Wingo and the Assistant State's Attorney. The State points out that the alleged error was not included in defendant's lengthy post-trial motion and may have been waived. (*People v. Pickett,* 54 Ill.2d 280.) In any event, we do not believe that the trial court abused its discretion in limiting the latitude of cross-examination where the alleged connection between the witness and the prosecution was so tenuous and the evidence of guilt so overwhelming.

The next allegation of error assigned is that the court improperly excluded from evidence the note that defendant purportedly found in Peoria directing defendant to meet Vaughn and Burton in Springfield. It is defendant's contention that the note was material and relevant as support for defendant's alibi and his contention that defendant was not with Vaughn and Burton the morning of the murder.

■■ The admission of exhibits at a trial is within the sound discretion of the trial court. (*People v. Braun,* 375 Ill. 284.) The proposed exhibit in the instant case was self-serving and no independent evidence was offered to establish its authenticity or chain of custody. We believe that the note was properly refused. In any event, defendant was allowed to identify the note and its author and read its contents to the jury. Thus, defendant could not have been prejudiced by the court's ruling.

Defendant next contends that he was denied a fair trial by the State's' use of a privileged communication to impeach him during cross-examination. Defendant was asked by the prosecutor when he first met codefendants Burton and Vaughn on the day of the robbery. Defendant stated that it was at a tavern in Springfield several hours after the robbery. The State apparently then produced a statement taken from defendant by a defense investigator and asked defendant if the contents were true. Defendant replied that the statement was true except for an apparent admission of planning the robbery. No objection was made to this questioning. Defendant explained that while he did not plan the robbery he had discussed it with Burton and Vaughn the night before the incident and said that the three planned to go to Taylorville and rob the store "if it looked right." Later in the cross-examination, the prosecutor asked defendant if he had told the investigator that he was to meet Burton and Vaughn at 8 a.m. Defendant denied the allegation and when the prosecu-

tor attempted to read that portion of the statement, a general objection by defense counsel was sustained. Defendant had previously testified that he was to meet the codefendants at 7:45 a.m. Still later, the prosecutor referred to the statement to question defendant about where he met Burton and Vaughn after the robbery. At this point defense counsel objected to the relevancy of the document and pointed out that the investigator worked for the public defender. The State responded that it was merely using a prior inconsistent statement of the defendant and the objection was overruled.

On rebuttal, the State attempted to call the investigator. Out of the presence of the jury, the court interviewed the witness and determined that he was an investigator for the Illinois Defender Project and had been called in to assist the defense. At this point, the court refused to allow him to testify because the information he had received from the defendant may have been privileged. The record contains no other information as to the nature or contents of the information given the State by the investigator or the circumstances surrounding its production. The questions of defendant relating to the statement were very brief in cross-examination which covers over one hundred pages in the record. In addition, defendant's testimony was not impeached materially by the slight inconsistencies pointed up in his otherwise complicated and detailed testimony. Finally, we note that the alleged error was not included in defendant's extensive post-trial motion.

■■■ It appears from the record that the discussion defendant had with the defense investigator should have been privileged from release to the State. As such, it was improper for the State to use the information to attempt to impeach the defendant. The trial court, largely because of the inaction of the defendant, obviously was not aware of the relationship between the investigator and the defense or the source of the statement used by the State. The court became fully apprised of the situation only when defendant objected to the investigator being called as a rebuttal witness. Had the court at that point allowed the witness to testify, we would be faced with a difficult decision. We do not believe, however, considering the voluminous record in this cause, that the brief and relatively innocuous references to the statement prejudiced defendant or denied him a fair trial.

■■ Defendant finally contends that his sentence of from 30 to 60 years is excessive. After the sentencing hearing, the court commented at length on the reasons for the severe sentence. Defendant previously had been convicted of forgery and burglary and twice had been returned for parole violations. The instant offense occurred only 4 months after his release from prison. In addition, defendant admitted at trial that he

978

was both a thief and a fence. Although defendant was not armed at the time of the robbery, he was equally responsible for the death of the shopkeeper. As the court noted, although the shooting may have been "accidental," death is a natural and expected by-product of any forcible felony where firearms are employed.

■■■ Although some disparity exists between the sentences imposed upon the three defendants (Burton received from 22 to 50 years, Vaughn from 40 to 80 years), disparity alone does not justify reduction of the sentence. (*People v. Thompson*, 36 Ill.2d 478; *People v. Vaughn*, 25 Ill.App.3d 1016.) We believe the trial court was fully justified in imposing a sentence of from 30 to 60 years.

The judgment of the Circuit Court of Christian County is affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.