(No. 48221.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JOHN D. KNIPPENBERG, Appellant.

*Opinion filed April 5, 1977.*

UNDERWOOD and RYAN, JJ., dissenting.

Robert Broverman, of Taylorville, for appellant.

William J. Scott, Attorney General, of Springfield (James B. Zagel, Jayne A. Carr, and Timothy B. Newitt, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The defendant, John D. Knippenberg, was convicted of murder after a jury trial in the circuit court of Christian County and sentenced to serve from 30 to 60 years in prison. The conviction was affirmed by the appellate court (33 Ill. App. 3d 971), and we allowed the defendant's petition for leave to appeal under our Rule 315 (58 Ill. 2d R. 315). The defendant's only contention is that he was denied a fair trial by the prosecution's improper use of a statement he had given to a defense investigator. He argues that this communication was protected from disclosure to the prosecution by the attorney-client privilege.

On April 22, 1972, at about 9:30 a.m. there was an attempted robbery in Taylorville, and the owner of a jewelry store was shot and killed. The circumstances of the occurrence have been described in *People v. Vaughn,* 25 Ill. App. 3d 1016, and *People v. Knippenberg,* 33 Ill. App. 3d 971, and will be stated here only to the extent our discussion requires.

The defendant was found by the trial court to be indigent, and the public defender was appointed to represent him. The public defender, however, withdrew as counsel and a private attorney was appointed. That attorney secured the services of Elmer Ward, an investigator for the Illinois Defender Project, to assist him in the defense. Ward, with the approval of the attorney and the consent of the defendant, interviewed the defendant at the jail and later prepared a summary of what the defendant had told him. Although it is not completely clear from the record, it appears that the prosecutor somehow obtained at least this summary without the knowledge of the defendant or his attorney. The prosecution never informed the defendant it had obtained this statement. A pretrial discovery motion of the defendant asked under our Rule 412 that the People disclose "any written or recorded statements and the substance of any oral statements made

by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements." (58 Ill. 2d R. 412(a)(ii).) This motion was allowed by the trial court.

At trial the defendant testified that he had met his codefendants, James Vaughn and John Burton, and another man in Peoria the day before the murder and had agreed to meet Vaughn and Burton at 7:45 the next morning at a restaurant in Taylorville. The purpose of the meeting was to plan the robbery of the owner of a jewelry store. The defendant said he arrived at the restaurant in Taylorville at the arranged time but neither Vaughn nor Burton was there. He then drove to an apartment in Peoria where Vaughn and Burton had spent the night and found a note from them directing him to meet them at a tavern in Springfield. When he arrived at the tavern, he said, he met an acquaintance who told him the owner of the jewelry store had been murdered, and that police were looking for the defendant in connection with the crime. The defendant testified he met Vaughn and Burton later that day in Springfield and drove with them to Iowa. He later drove with Vaughn to California, where several of the defendant's relatives lived.

On cross-examination the defendant was asked when he had first met Vaughn and Burton on the day of the murder. Consistent with his testimony on direct examination, he said it had been in Springfield, several hours after the murder. The following colloquy then took place:

"Q. [PROSECUTOR] Did Elmer D. Ward interview you?

A. Yes, ma'm, he did.

Q. And what did you tell him about with reference to where you had seen Jim Vaughn and John Burton on Saturday?

A. At Bob & Rita's.

Q. Let me hand you this statement which comes from Elmer Ward's files, let me read this and see if that is what you told him.

A. Partly, yes.

Q. Well, what part is not what you told him?

A. This admitting to the setting up of a robbery.

Q. Well, do you now admit or deny the setting up a robbery?

A. I deny setting up a robbery. I don't deny the fact that I was in Taylorville that morning.

Q. But you now deny planning the robbery?

A. I did not plan the robbery."

There was no objection by the defendant at this time. The defendant then explained that he and Vaughn and Burton had discussed the proposed robbery the night before and at that time had agreed to meet in Taylorville the next day and go ahead with the robbery "if it looked right."

Later in the cross-examination the prosecutor asked if the defendant had told Ward that he was to meet Vaughn and Burton at 8 a.m. in Taylorville rather than at 7:45 a.m. as the defendant had testified on direct examination. The defendant denied he had made the statement to Ward and objected when the prosecutor began to read from the summary of the defendant's statement to Ward. The objection was sustained. Later in the cross-examination the prosecutor asked the defendant whether he had told Elmer Ward he had met Vaughn and Burton after the robbery at a location which was not the location the defendant had given in his direct examination. The defendant denied he had, and his attorney then objected:

"MR. BROVERMAN: Your Honor, I object at this time to what he told Elmer Ward.

[PROSECUTOR]: It's something prior, some prior inconsistent statement.

THE COURT: What is your objection?

MR. BROVERMAN: I don't see the relevancy and Elmer Ward is the investigator for the Public Defender's system.

[PROSECUTOR]: That's right.

MRS. SWEENEY [assistant State's Attorney]: Your Honor, we have been furnished with certain statements of Elmer Ward which we procured from Elmer Ward and not the defendant that are inconsistent [with] the testimony here.

\* \* \*

THE COURT: I'll overrule the objection."

When the defense rested, the People called Elmer Ward as a rebuttal witness. The jury was removed from the courtroom, and the defendant's attorney objected to Ward's testifying as to what the defendant had told him on the ground it had been a privileged communication. The trial court sustained the objection.

The appellate court held that, although the conversations between the defendant and the investigator were privileged, the improper reference to the communication on cross-examination was harmless error. 33 Ill. App. 3d 971, 977.

The defendant contends here that the People's use of the privileged communication for impeachment purposes was seriously prejudicial and denied him a fair trial. The People argue that the communication was not privileged and that, even if it was, the defendant waived the privilege when he did not timely object at trial. Too, the People argue that any error was harmless in light of the overwhelming evidence of the defendant's guilt.

In *People v. Adam,* 51 Ill. 2d 46, 48, this court said:

"The attorney-client privilege exists in order that one who is, or seeks to become a client, may consult freely with counsel without fear of compelled disclosure of information communicated by him to the attorney whom he has employed, or seeks to employ. The essentials of its creation and continued existence have been defined as follows: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection

be waived.' 8 Wigmore, Evidence sec. 2292 (McNaughton Rev. 1961)."

See also *Dickerson v. Dickerson,* 322 Ill. 492, 500.

The circumstance that the defendant's communications here were made to the investigator, rather than directly to his attorney, did not deprive the defendant of the benefit of the privilege. Ward was acting as the agent for the defendant's attorney at the time he interviewed the defendant.

This court in *People v. Ryan,* 30 Ill. 2d 456, held that a statement of an assured to an insurance adjuster of her company, to be given for the purpose of protecting her legal interest, was clothed with the attorney-client privilege. The defendant had been in an automobile collision and an investigator of her insurance company took a written statement from her covering the details of the occurrence. The statement showed the defendant to have been at fault. The company, under its policy, was obligated to conduct the assured's defense in any civil litigation brought as a result of the collision. Later, criminal charges were filed against the defendant and her insurance company turned over her written statement to her privately retained defense counsel. The attorney refused to produce the statement in response to a State's Attorney's subpoena and was held in contempt. This court reversed the judgment of contempt, holding that the communication, although given to the adjuster who was the client's agent and then transmitted to the attorney, was privileged.

Professor Wigmore considered it clear that the communication did not have to be directly with the attorney. He observed:

"It has never been questioned that the privilege protects communications to the *attorney's clerks* and his other agents (including stenographers) for rendering his services. The assistance of these agents being indispensable to his work and the communications of the client being

often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents." 8 Wigmore, Evidence sec. 2301, at 583 (McNaughton Rev. ed. 1961).

The People's contention that the privilege should not apply here because, it is claimed, the investigator was not necessary or essential to communication between the defendant and his attorney is unimpressive. As the use of law clerks, secretaries and stenographers is common and necessary for an attorney as a practical matter, realities of practice often require an attorney's use of investigators. "The attorney's obligation to investigate fully and without delay is of course basic. 'It is the duty of the [defense] lawyer to conduct a prompt investigation of the circumstances of the case ***.' " ABA Standards, The Defense Function sec. 4.1 (1971).

Under the circumstances we must reject the People's argument that the defendant, by not making timely objection, waived the privilege and that any error in reference to the investigator's statement was harmless. The principal reason is that the admission of the references to the statement given the investigator by the defendant was prejudicial error of an intolerable character and violated the defendant's constitutional assurance of the effective assistance of counsel under the sixth amendment and to a fair trial under the due process clause of the fourteenth amendment. As has been noted, the defendant's attorney secured the services of Ward, an investigator for the Illinois Defender Project, to assist him. Ward, with the consent of the defendant and with the approval of the defendant's attorney, interviewed the defendant, who was in jail, and prepared a summary of the interview. It appears that the statement of the interview prepared by Ward incredibly was given to the prosecution. In the record there is a statement of an assistant State's Attorney: "We have been furnished with certain statements of Elmer Ward which we procured from Elmer Ward and not from the defendant

that are inconsistent with the testimony [of the defendant] here." In another portion of the record the defendant's attorney, at the time he was objecting to the proposed testimony of Ward, stated: "Mr. Ward is the investigative agent for the Public Defender project. I asked him to assist me in talking to some witnesses here; that he has done. Then I am told that he has given copies of these reports to the state's attorney's office yesterday. I employed him to help me and assist me with John D. Knippenberg, and now I understand that correspondence sent to me was also sent to the state's attorney's office. I don't know what he has to say, but I object to him testifying in this manner." The State's Attorney's response to this was only that if the defendant's attorney "had complied with our discovery motion, we would not [have] had to get him [presumably Ward] ."

What occurred here was violative of the notion of a fair trial and completely offensive to the concept of the effective assistance of counsel. The prejudice to the defendant was grave and inexcusable. Under the sixth amendment an accused has the right to the effective assistance of counsel, which is applicable to State criminal proceedings through the due process clause of the fourteenth amendment. (*Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758.) It has been observed that "the essence of the Sixth Amendment right is *** privacy of communication with counsel." *United States v. Rosner,* (2d Cir. 1973), 485 F.2d 1213, 1224.

The Supreme Court has reversed convictions where the intrusion on the attorney-client relationship was not as direct as here and less egregious. In *Black v. United States,* 385 U.S. 26, 17 L. Ed. 2d 26, 87 S. Ct. 190, the court vacated the conviction for tax evasion and ordered a new trial where after the trial it was learned that Federal agents had monitored conversations between the accused and his attorney while preparing for trial. See also *O'Brien v. United States,* 386 U.S. 345, 18 L. Ed. 2d 94, 87 S. Ct.

286

1158; *State v. Cory* (1963), 62 Wash. 2d 371, 382 P.2d 1019.

In the recently decided case of *Weatherford v. Bursey,* 429 U.S. 545, 51 L. Ed. 2d 30, 97 S. Ct. 837, Weatherford, a government informer who was also ostensibly a codefendant, at the defendant's request, attended two pretrial conferences between the defendant and his attorney. A divided court held there was no violation of the accused's sixth amendment right, since the trial court had made a specific finding that the informer had communicated nothing about the conferences to anyone and had not testified about the conferences at trial. The majority opinion stated: "If anything is to be inferred from these two cases [*Black* and *O'Brien*] with respect to the right to counsel, it is that when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial." 429 U.S. 545, 552, 51 L. Ed. 2d 30, 38, 97 S. Ct. 837, 842.

Here the violation of the attorney-client relationship was clear and indefensible. The communication, in preparation for trial, by the defendant to his attorney through the defense investigator was made available to the prosecution. The confidential materials of the interview were then used at the trial to impeach the defendant.

To exacerbate, if possible, the offensiveness of the violation, the surprise to the defendant was complete. (See McCormick, Evidence sec. 93, at 195 (2d ed. 1972).) The prosecution never informed the defendant that it had acquired the investigator's statement.

We cannot accept the People's contention that the error here can be considered as harmless. Because we do not accept this contention we need not decide whether there should be an automatic reversal of the conviction to deter violations of the right to counsel's assistance and to preserve public confidence in our justice system. See cases

cited in Mr. Justice Stewart's concurring opinion in *Chapman v. California,* 386 U.S. 18, 42, 17 L. Ed. 2d 705, 720, 87 S. Ct. 824, 837; Mause, *Harmless Constitutional Error: The Implications of Chapman v. California,* 53 Minn. L. Rev. 519, 552-56 (1969).

Before a Federal constitutional error can be held harmless, the court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (*Harrington v. California,* 395 U.S. 250, 251, 23 L. Ed. 2d 284, 286, 89 S. Ct. 1726, 1727; *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828.) " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Chapman v. California,* 386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827; see also *Schneble v. Florida,* 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1060.

Here there was substantial evidence of the defendant's guilt. However, the defendant's whole defense hinged on the jury's accepting his testimony that he had not participated in the crime since, as he testified, he had not met his codefendants on that morning as they had planned. The prosecution's repeated references to the inconsistent statement on this question which allegedly had been given Ward and the defendant's attempts to deny or explain almost necessarily had an adverse effect on the defendant's credibility.

There was additional prejudice to the defendant when his attorney had to object to the proposed testimony of Elmer Ward in the presence of the jury. The jury had been made aware that Ward had interviewed the defendant and that he had made an earlier statement to Ward that was allegedly inconsistent with his testimony. When the defendant's own investigator was called as the rebuttal witness for the prosecution in the presence of the jury and the defense objected to his being called, it certainly had a prejudicial effect on the members of the jury. The jury

would naturally conclude under the circumstances that the defendant's investigator would have contradicted the defendant's testimony.

Given these circumstances, we consider that there is "a reasonable possibility" that the constitutional violation here may have "contributed to the conviction." Too, the right to the assistance of counsel is of first importance in our administration of criminal justice. The right should not be diminished by attrition. As the Supreme Court pronounced: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467; *People v. Noble,* 42 Ill. 2d 425, 431.

For the reasons given, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Christian County for a new trial.

*Reversed and remanded.*

MR. JUSTICE UNDERWOOD, dissenting:

I do not agree that a new trial is necessary. Although the circumstances under which the statement of the defendant was obtained from the investigator for defense counsel are not shown by the record, its use by the State was clearly improper as the opinion of the court emphasizes. I do not condone that use, but I agree with the appellate court that, in the context of this case, such use did not constitute reversible error. That the insubstantial impeachment of defendant resulting from use of the statement was not regarded by him as seriously prejudicial seems to me apparent from the fact that it was not even mentioned as error in defendant's post-trial motion.

Given the quality and quantity of proof of guilt in this case, which includes positive identification by two eyewitnesses, testimony by two others that defendant admitted participation in the robbery, and many corrobora-

ting circumstances, the totality of which the appellate court characterized as "overwhelming," it seems to me clear that the error in using the statement "was harmless beyond a reasonable doubt." *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 828.

I would affirm the trial and appellate court judgments.

MR. JUSTICE RYAN joins in this dissent.

MR. JUSTICE RYAN, also dissenting:

I join in the dissent of Mr. Justice Underwood. I also wish to note that we need not here be overly concerned with whether the alleged error was harmless error "beyond a reasonable doubt," because the defendant did not properly preserve the issue for review and has thus waived it as error. The opinion properly notes that when the defendant was first cross-examined concerning the statement he gave to the investigator, no objection was made. Later, when appropriate objection was made to the use of the investigator in rebuttal, the court sustained the defendant's objection. Finally, and most damaging to the defendant's position on review, this issue was not raised in the post-trial motion. Therefore, the trial judge who presided at the trial and who had a first-hand opportunity to appraise the impact upon the jury of the very limited use by the prosecution of the investigator's statement was never given the opportunity to pass upon this alleged error. As noted in the dissent in *People v. Lott* (1977), 66 Ill. 2d 290, 302, the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 116—1) requires that a written motion for a new trial specify the grounds relied upon. A failure to specify an error in the written motion constitutes a waiver, and that issue cannot be raised as a ground for reversal on review. *People v. Pickett* (1973), 54 Ill. 2d 280.

Here the alleged violation of the defendant's constitutional right has been waived by the defendant's failure to properly and timely object at the trial and to raise the

issue in his post-trial motion. As stated by this court in *People v. Black* (1972) 52 Ill. 2d 544, 551: "Constitutional questions as well as others may be waived by the absence of prior objections and the failure to preserve the same for review." It is true that the waiver rule may be relaxed, as a matter of grace, by a reviewing court. However, in cases such as this one the rule is only relaxed when the evidence is closely balanced (*People v. Pickett* (1973), 54 Ill. 2d 280, 283), which it was not in this case.

In summary, I do not believe that, when the evidence of guilt is as overwhelming as it is in this case and when the defendant has failed to preserve an issue for review, the court should seize upon such an issue and reverse a valid conviction solely for the purpose of punishing an errant prosecutor. I would therefore affirm the conviction.